# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

CAROLYN HARRIS, et al                                                                                    PLAINTIFFS

V.                                                                                                             CIVIL ACTION NO. 4:01CV83-M-D

TRUSTMARK NATIONAL BANK, et al                                                 DEFENDANT

## ORDER

This cause comes before the Court upon defendant Trustmark National Bank's (Trustmark) motion [77-1] for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiffs Carolyn Harris, *et al* have responded in opposition to the motion. The court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is an ERISA action involving former employees of the Canton Exchange Bank and the Rankin County Bank, which were acquired by defendant Trustmark in 1983 and 1987, respectively.[1] Plaintiffs allege that Trustmark failed to deliver on promises made to them that, upon being hired by Trustmark, they would be provided with certain retirement benefits comparable to the benefits enjoyed by pre-existing Trustmark employees. In particular, plaintiffs are aggrieved over not being provided (until 1998 or 1999) with the full benefits available in the 401(k) and profit sharing plans which Trustmark offers to its employees. On March 9, 2001, plaintiffs filed suit against Trustmark in the Circuit Court of Washington County, alleging fraud,

---

[1] Initially, plaintiffs included former employees of State Guaranty Bank and Brookhaven Bank & Trust as well. However, on November 17, 2005, plaintiffs filed a motion to amend their complaint to omit claims of these former State Guaranty Bank and Brookhaven Bank & Trust employees, and they do not assert claims from such former employees in their briefing before this court. The court therefore has before it solely claims asserted by former Canton Exchange Bank and Rankin County Bank employees.

misrepresentation, and breach of contract. Trustmark removed the case, and on March 7, 2002, this court denied plaintiffs' motion to remand, concluding that federal question jurisdiction based on ERISA pre-emption existed. Subsequently, this court was faced with a lengthy array of motions and counter-motions, including an interlocutory appeal filed by plaintiffs (which was subsequently dismissed) and motions to amend filed by plaintiffs.

On July 1, 2004, this court entered an order finding that plaintiffs had failed to exhaust their administrative remedies (as required by ERISA law) and staying the case pending such exhaustion of remedies. On August 25, 2004, plaintiffs' counsel presented the administrative claims of several plaintiffs who are current or former employees of Canton Exchange Bank and Rankin County Bank. Trustmark notes that the original administrative claims "consisted only of a brief transmittal letter and a copy of the amended complaint previously filed with the court" and that "the claimants submitted no evidentiary support for their claims." On January 14, 2005, James R.I. Brown, Assistant Vice-President and Benefits Manager for Trustmark, serving as the Plan Administrator, issued a Notice of Denial providing specific reasons and documentation supporting his denial of plaintiffs' claims. Plaintiffs appealed that decision, and, on June 15, 2005, the Plan Administrator notified plaintiffs that this appeal had been denied and that the administrative review process was complete. Thus, the parties agree that the plaintiffs presently before the court have now exhausted their administrative remedies and that this matter is now ripe for adjudication.

ERISA provides federal courts with jurisdiction to review determinations made by employee benefit plans, including health care plans. 29 U.S.C. § 1132(a)(1)(B). A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard "unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).

In this case, the ERISA plan in question clearly grants the Plan Administrator discretion to determine eligibility for benefits. For example, section 13.7(c) of the plan provides that the "Administrator shall make all determinations regarding eligibility for participation in and benefits under the Plan." Moreover, section 13.8(b) of the Plan provides that "(t)he Administrator shall exercise its power and authority in its discretion. It is intended that a court review of the Administrators exercise of its power and authority ... shall be made only on an arbitrary and capricious standard." In light of the foregoing, it is apparent that a highly deferential standard of review applies to the Plan Administrator's decision to deny plaintiffs' claims for benefits. As in other ERISA cases, this fact is of paramount importance for the purposes of this court's review. This court emphatically does not have the authority to substitute its own judgment for that of the Plan Administrator and is, instead, limited to a determination of whether the Administrator abused his discretion.

In considering whether the Plan Administrator abused his discretion in this case, it is first necessary to address an issue which applies only to the plaintiffs who are former employees of Rankin County bank. Trustmark contends, and the Plan Administrator found in his ruling, that

> The issue of whether claimants formerly employed by Canton Exchange Bank and Rankin County Bank would participate in Trustmark's pension and/or profit-sharing plan was discussed and negotiated by the banks' executives at the time of acquisitions. In fact, the Canton Exchange Bank and Rankin County Bank executives insisted as a condition of the acquisitions that their employees be able to keep their own retirement plans rather than being placed in Trustmark's plan.

3

While the evidence in this case does appear to support a conclusion that the former Rankin County Bank employees were to stay within their own retirement plan, the Rankin County plaintiffs have raised (albeit belatedly) arguments that Trustmark had agreed to make contributions to the Rankin County Bank retirement plan.

Specifically, plaintiffs cite a February 6, 1986 letter from Rankin County Bank executives to Trustmark executives setting forth the parties' understanding that, as part of any merger:

> A. Profit Sharing Investment Plan 401k. Trustmark shall guarantee to the employees of Rankin County Bank benefits under the same or similar plan not less than those enjoyed by such employees under the Rankin County Bank plan. Trustmark agrees to make contributions to the Rankin County Bank plan on a comparable basis to the contributions made under the Trustmark plan if they have not established a similar plan.

The first sentence of this provision appears to support the position of Trustmark in this case that it was obligated to merely guarantee the benefits which the former Rankin employees would have enjoyed under their own plan. However, plaintiffs argue that the second sentence quoted above requires former Rankin County Bank employees to stay within their own plan, but provides that Trustmark will make contributions to that Rankin County Bank plan on a comparable basis to the contributions made under the Trustmark plan "if they have not established a similar plan." It is unclear to this court whether the Rankin County Bank plan is properly considered a "similar plan" to the Trustmark plan, and a resolution of this seemingly subjective issue would likely be important in determining whether Trustmark had a duty to make contributions to the Rankin County Bank plan.

In his ruling, the Plan Administrator noted the *first* sentence of the aforementioned passage relating to the profit sharing plan, writing that:

> As noted in a February 6, 1986 letter agreement (attached), Trustmark agreed to

provide Rankin County Bank employees with retirement benefits not less than
what they would receive under their existing plans with Rankin County Bank.

(Plan administrator's ruling at 6). The Plan Administrator failed to address the meaning of the second sentence of that letter, but he did attach a copy of the letter to his ruling, this making it a part of the administrative record.

Ultimately, the court concludes that the uncertainties arising from the February, 1986 letter agreement must be resolved against plaintiffs, given that they failed to raise these issues before the Plan Administrator. The court has carefully reviewed the plaintiffs' original administrative complaint, as well as their administrative appeal to the Plan Administrator dated March 11, 2005. In their appeal, plaintiffs quoted from the aforementioned portion of the Plan Administrator's January, 2005 ruling dealing with the Merger Agreement, yet they did not take issue with his discussion of that agreement in his ruling. Even more significantly, plaintiffs specifically denied that a breach of the merger agreements might be an issue in this case, arguing that:

> The question presented in not whether Trustmark breached any of the merger agreements, but rather the question is whether Trustmark complied with its fiduciary duty owed to claimants and whether Trustmark has complied with applicable I.R.S. and ERISA rules.

(Plaintiffs' appeal at 11). Thus, plaintiffs not only failed to raise the issue of the breach of the merger agreements before the Plan Administrator, but they specifically represented to the Administrator that such was not a "question presented" to him for review.[2]

---

[2] Plaintiffs did made vague statements in their administrative appeal that "Trustmark represented that it would keep the retirement plans of its employees relatively equal," but plaintiffs made this statement directly following their statement that the issue of whether Trustmark had complied with its merger agreements was not before the court. There is similar vague language in the complaint, but, given the specificity of the plaintiffs' representations in

It goes without saying that this court may not consider on appeal issues which plaintiffs specifically denied were at issue in their proceedings before the Plan Administrator. In so concluding, the court would also note that the second sentence by no means unambiguously favors the position of the plaintiffs. It may well be the case that, if the issue had been raised before him, the Plan Administrator would have provided an explanation as to why the second sentence did not entitle plaintiffs to benefits. For example, the Administrator may have concluded that the Rankin County Bank plan was sufficiently similar to the Trustmark plan that no contributions from Trustmark were required, or he may have concluded that the ERISA plan itself superseded the merger agreement. This court would have been required to show deference to the Plan Administrator's conclusions in this regard. Regardless, plaintiffs specifically denied in their pleadings below that a violation of merger issues might be an issue in this case, and it would accordingly be improper for the court to consider this issue now.

This court would likely remand for additional administrative proceedings as to the Rankin plaintiffs if the record demonstrated that they had not been provided with a copy of the February, 1986 letter in time to raise it before the Plan Administrator. As noted previously, however, the Plan Administrator attached the February, 1986 letter to his original ruling, and plaintiffs clearly had a duty to review the administrative record and raise any objections to the Administrator's findings regarding that record in their administrative appeal. It appears that plaintiffs' failure to raise this issue was a simple oversight, but this does not alter the fact that this issue was not timely raised. The court will therefore disregard any issues arising from the February, 1986 letter agreement, and the remaining issues before the court apply equally to the claims of the

---

their administrative appeal that the merger agreements were not at issue, this court can only conclude that this issue was not raised before the Plan Administrator.

Rankin County Bank and Canton Exchange Bank employees.

In this case, the Rankin and Canton plaintiffs base their claims largely upon oral statements allegedly made by Trustmark managers and employees which, they contend, led them to believe that they would be receiving retirement benefits greater than those of other Trustmark employees. Plaintiffs raise these arguments in terms of a misrepresentation cause of action, but it is very doubtful whether a state law claim for misrepresentation would even apply in an ERISA case. Even if such a cause of action were to apply in this context, however, the court would still conclude that such a claim lacked merit based upon the evidence and arguments presented to the Plan Administrator. That is, even if the court were to conclude that Trustmark employees made the statements in question regarding the relative values of the Canton, Rankin and Trustmark plans and that these statements were not accurate, this would still not suffice to establish a misrepresentation claim. A misrepresentation is a false statement of fact made to induce the reliance of another party, and the Plan Administrator clearly found that even the former Canton and Rankin executives believed that their own plans were more valuable than the Trustmark plans. That being the case, it is perhaps understandable that certain Trustmark employees would have also believed that such was the case.

It is also apparent that, even if a misrepresentation were somehow deemed to have been made in this regard, the element of justifiable reliance would still be missing. Plaintiffs contend that they relied upon the alleged representations of Trustmark employees in deciding not to quit their jobs, but this is, in the court's view, insufficient to establish the sort of detrimental reliance required to establish a misrepresentation claim. Obviously, if plaintiffs had quit their jobs over their dissatisfaction with their retirement benefits, then they would not have enjoyed any

7

retirement benefits at all under the Trustmark plan. Plaintiffs also argue that Trustmark had a fiduciary duty to make good on those promises and to provide them with benefits which were at least as valuable as those enjoyed by other Trustmark employees. While it may (or may not) be the case that the plaintiffs' former bank executives could have done a better job in negotiating the retirement benefits of their employees, the fact that this decision was made as part of formal, arms-length negotiations defeats plaintiffs' claims of a breach of any fiduciary duty in this case.

While it is understandable that plaintiffs should be aggrieved over (apparently) receiving fewer retirement benefits than their co-workers, the crucial point in this case is that the decisions made by the Plan Administrator regarding benefits were consistent with one arguable interpretation of a rather complex plan which was forced to account for multiple mergers of banks, some of whose former executives had insisted that their employees stay under their own plan. Trustmark was also required to account for changes in tax and other laws which required subsequent modifications to the plan. This is not a straight-forward case of plaintiffs clearly being entitled to benefits, but rather involves complex determinations as to which this court is required to show the Plan Administrator considerable deference. Plaintiffs offer this court one arguable interpretation of how the Plan Administrator should have determined eligibility for benefits in this case, but the court concludes that they have failed to demonstrate that the Plan Administrator abused his discretion in concluding that they were not entitled to the relief which they seek.

The court now turns to the other issues raised by plaintiffs, namely whether IRS and/or ERISA law entitles them to relief in this case. Plaintiffs first argue that ERISA law bars the exclusion of former Canton and Rankin employees from the full Trustmark profit sharing plan.

8

However, plaintiffs fail to cite any authority which would support this conclusion, and the court would note that the Fifth Circuit has rejected nearly identical arguments in a similar context. In *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1130-31 (5th Cir. 1996) the Fifth Circuit concluded that one ERISA provision, 29 U.S.C. § 1052(a), did not prevent an employer from denying employees participation in an ERISA plan if the employer does so on a basis other than age or length of service. Based upon this authority, it seems highly likely that the Fifth Circuit would conclude that Trustmark did not act unlawfully in distinguishing between former employees of Canton Exchange Bank and Rankin County Bank and other Trustmark employees in establishing their ERISA plan. In so concluding, the court would emphasize that it was clearly contemplated as part of the merger agreements that the former Canton and Rankin employees would stay within their respective plans.

Plaintiffs next argue that they should be permitted to pursue a private cause of action based upon the Trustmark plan's alleged discrimination in favor of highly paid workers. Plaintiffs contend that such discrimination violates Treasury regulations relating to tax-exempt entities, see 26 U.S.C. § 401(a)(4), but other circuits have rejected attempts by plaintiffs similarly situated to those herein to maintain private enforcement actions based upon alleged violations of this same provision. *See Reklau v. Merchants Nat. Corp.*, 808 F.2d 628 (7th Cir. 1886); *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888, 890 n. 3 (1st Cir. 1978). Significantly, the Fifth Circuit has approvingly cited *Reklau* for the proposition that "[w]e do not incorporate the Treasury regulations into ERISA to create substantive rights," *see Tulley v. Ethyl Corp.*, 861 F.2d 120, 125 n. 9 (5th Cir. 1988), and it thus seems clear that plaintiffs may not maintain a private cause of action based upon the Trustmark Plan's alleged violation of Treasury

9

regulations relating to tax-exempt entities.[3]

In light of the foregoing, it is ordered that Trustmark's motion for summary judgment **[118-1]** is granted as to the claims of all plaintiffs. The claims of the plaintiffs which were presented to and rejected by the Plan Administrator will be dismissed with prejudice, and the claims of any remaining plaintiffs who did not present their claims before the Plan Administrator will be dismissed without prejudice for failure to exhaust administrative remedies.

A separate judgment will be issued this date in accordance with Fed. R. Civ. P. 58.

This, the 29th day of September, 2006.

        **/s/ Michael P. Mills**
        **UNITED STATES DISTRICT JUDGE**

---

[3] The court likewise concludes that plaintiffs' claims regarding $150 charges allegedly made by Trustmark for documentation lack merit, for the reasons stated in Trustmark's brief.